1   Jaron Brignac
2   9107 Wilshire Blvd, Suite 450
    Beverly Hills, CA  90210
3   Tel: (818) 738-9861
    Fax: (323) 978-4215
4
    Attorney for Plaintiff Jaron Brignac
5

FILED

AUG 1 1 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA



# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

SBA

| | |
|---|---|
| JARON LAMAR BRIGNAC, an individual, **Plaintiff,** vs. **CITY OF DUBLIN POLICE SERVICES, ALAMEDA COUNTY DISTRICT ATTORNEY'S OFFICE, OFFICER WILLIAM CHASE** in his individual and official capacity, **ANNIE ESPOSITO,** in her individual and official capacity as a district attorney, and **DOES 1 through 10 inclusive,** **Defendants.** | Case No. **CV16 - 4569** **42 U.S.C. § 1983 CIVIL RIGHTS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** 1. Unlawful Search & Seizure by Officer; 2. Equal Protection Violation-race discrimination by officer; 3. Judicial Deception by Officer; 4. Equal Protection Violation-race discrimination by District Attorney; 5. Supervisory and Municipal Liability by City of Dublin Police Services **(DEMAND FOR JURY TRIAL)** |

1

Plaintiff bring this action, and alleges as follows:

## I.    INTRODUCTION

1.    This is a civil rights action to secure the protection, and redress the deprivation of

Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States

Constitution, pursuant to the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985.

### A. DEFENDANTS SHALL NOT BE ENTITLED TO ABSOLUTE IMMUNITY FOR PERFORMING INVESTIGATIVE ACTS AND FABRICATING EVIDENCE DURING THE EARLY STAGES OF AN INVESTIGATION

2.    A prosecutor enjoys only qualified immunity, not absolute immunity, *for investigatory,*

*administrative, or investigative functions such as "gathering physical evidence and*

*conducting interrogations to determine whether a crime has been committed and whether*

*probable cause exists to arrest a suspect."* See *Broam v. Bogan,* **320 F.3d at 1028, 1031.**

3.    Similarly, *absolute immunity does not protect a prosecutor who fabricates evidence*

*during the early stages of an investigation, or who holds defamatory press*

*conferences.* See *Buckley v. Fitzsimmons,* **509 U.S. at 275-77.**

### B. DEFENDANTS' PENDING STATE PROSECUTION ARE NOT ENTITLED TO ABSTENTION FROM FEDERAL INJUNCTION DUE TO PROSECUTION BEING IN BAD FAITH

4.    Pursuant to United States Supreme Court in **Younger v. Harris, 401 U.S. 37** (1971),

*abstention does not apply in cases where extraordinary circumstances threaten great,*

*immediate and irreparable injury. S*ee **Younger, 401 U.S. at 45-46, 53-54** (irreparable injury

shown where statute flagrantly and patently violative of express constitutional prohibitions);

**Perez v. Ledesma, 401 U.S. 82, 85,91 S.Ct. 674 (1971)** *(federal injunctive relief in pending*

2

*state prosecutions proper in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction).*

5.     The Alameda County District Attorney's Office, and Deputy District Attorney Annie Esposito, aided and coerced Officer William Chase, through its agents, in fabricating evidence against Plaintiff, specifically, the affidavit for probable cause of warrantless arrest to search and seize Plaintiff, all as a means to substantiate valid grounds for initiating the fraudulent filing of the criminal complaint against Plaintiff because of his suspect class (i.e. Black male/African American),because of Plaintiff's political affiliation to the co-founder of Black Lives Matter, and because of Plaintiff's past and current prisoner civil rights actions against State Officials, and the criminal justice system. The prosecution and its colleagues conducted an early preliminary investigation on Plaintiff, which revealed Plaintiff's Political affiliation as a former prisoner's civil rights advocate, and affiliation to Black Lives Matter. Additionally, investigated and searched prior felonies against Plaintiff.

6.     The prosecution's case is out of bad faith predicated upon racial discrimination and retaliation for Plaintiff exercising his constitutional rights.

## JURISDICTION AND VENUE

7.     This is an action for injunctive relief and damages pursuant to 42 U.S.C. § 1983, based upon ongoing violations by the defendants of the rights secured to plaintiffs by the Fourth, and Fourteenth Amendments of the United States Constitution. Jurisdiction exists based on 28 U.S.C. §§ 1331 and 1343 in that this case is brought pursuant to 42 U.S.C. § 1983 and raises questions of federal constitutional law under the Fourth, and Fourteenth Amendments. The

3

court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

8.     Venue is proper in the Northern District in that the events and conduct complained of in this action occurred in the Northern District.

## PARTIES

9.     Plaintiff is a natural person residing in Los Angeles, California.

10.    Upon information and belief, Defendant City of Dublin Police Services (City) is a municipal entity organized under the laws of the State of California. The City is a legal entity with the capacity to sue and be sued. The departments of the City of Dublin include the Dublin Police Services, employees of which engage in acts constituting the violations of plaintiffs' rights alleged in this action.

11.    Upon information and belief, Defendant Officer William Chase is an officer with the City of Dublin Police Services and is sued in his individual and official capacity. He continues to be an officer for the City of Dublin Police Services at all relevant times in this complaint.

12.    Upon information and belief, Defendant Annie Esposito, is a deputy district attorney for Alameda County, California, specifically for the Pleasanton Superior Court branch.

13.    Upon information and belief, Defendant Alameda County District Attorney's Office, for Pleasanton California Superior Court.

14.    The identities and capacities of defendants DOES 1 through 10 are unknown to plaintiff. Plaintiff, therefore, sue these defendants by fictitious names. As to all defendants sued by fictitious names, plaintiffs will give notice of this Complaint and their true names and

4

capacities when ascertained. Plaintiff is informed, believe, and thereon allege that DOES 1 through 10 are, and were at all times relevant herein, other corporate or business entities, agents, successors in interest, assigns, representatives, principals and/or employees of the defendants and are responsible for the acts and omissions resulting in the violations alleged in this complaint. Defendants DOES 1 through 10 are sued in both their official and individual capacities.

15.    Each of the defendants acted as joint actors with joint obligations, and each defendant was and is responsible for the conduct and injuries herein alleged.

16.    Each of the defendants acted, alone or together jointly, under color of law.

## STATEMENT OF FACTS

**Plaintiff's road trip to Dublin California**

17.    On October 15, 2015, at approximately 8:00 am, Plaintiff, Jaron Brignac, Plaintiff's wife Angel Hunter, Plaintiff's sister-in-law Amber Hunter, and Plaintiff's cousin Karl Coakley, collectively traveled from Los Angeles County California to San Ramon, California because Plaintiff's sister-in-law was scheduled for a surgical procedure in San Ramon, California which obligated her to remain local to San Ramon for three to four days for recovery and follow ups after the surgical procedure. Therefore, Plaintiff's sister-in-law needed to reserve a room at a hotel local to San Ramon, California. Therefore, Plaintiff 's wife reserved a room for four days at the Extended Stay America Hotel in Dublin, California.

18.    Plaintiff accompanied his wife and sister-in-law out of support and concern for their safety because they were new and upcoming celebrities in a nationally recognized reality television show known as Love and Hip Hop Hollywood. Plaintiff's wife has made several guest appearances on the show with her sister. Plaintiff is and was a paralegal at the time and president of BPCS LAW in

5

Beverly Hills, California. Plaintiff was responsible for looking over his sister-in-law's entertainment contracts. Plaintiff was the designated driver of the 2014 Mercedes Benz registered to his sister-in-law.

19.     Plaintiff's wife, Angel Hunter, owned a registered firearm, and brought the firearm with her in a locked box out of safety concerns and due to the national attention.

20.     When Plaintiff arrived in Dublin, California, around 7:45 PM, he parked inside the parking lot structure of the Extended Stay Hotel on 4500 Dublin Blvd. Plaintiff's wife and Sister-in-law walked into the reception area of Extended Stay Hotel to check in. Plaintiff was exhausted from the long drive. They were all tired and begin to unpack and carry their belongings to their hotel room. Once inside their hotel room, Plaintiff consumed four shots of hennessy alcohol and immediately went to sleep. Thirty minutes after Plaintiff was asleep, his wife realized her firearm was not in the locked box and asked Plaintiff to look for it in the glove department of the Mercedes Benz parked outside. Plaintiff exited the hotel back to the parking lot. He decided to get his medication while he was going to get the firearm. He had to urinate urgently but the bathroom in the hotel was occupied and he didn't feel like waiting. Once he got to the car, he retrieved the firearm from the gloved department and pocketed it. He then turned to the bushes and begin urinating. While urinating, Plaintiff heard the sound of a car pull up behind his sister-in-law's car. Plaintiff turned around and was appalled to see it was a police officer approaching him. (later identified as Officer William Chase). At that time Officer William Chase asked him what's his business here, and Plaintiff said that he was a tenant at the Extended Stay. Officer William Chase then asked for Plaintiff's identification. Plaintiff reached into his pocket, pulled out his wallet and handed it to Officer William Chase. Officer William Chase asked Plaintiff if he had any weapons on him and Plaintiff said no. Subsequently, Officer William Chase ordered Plaintiff to turn around for a pat search at which time he started searching Plaintiff. After searching Plaintiff's left pocket, Plaintiff admitted to having his wife's firearm in his right pocket.

6

Immediately, Officer William Chase placed Plaintiff under arrest without reading or notifying Plaintiff of his Miranda rights.

21.     After examining page 5 of the police report, Officer William Chase asserts: "Brignac was compliant and stated he did not have any weapons on him", which was Plaintiff's initial response after Officer William Chase asked Plaintiff if he had any weapons on him before he conducted the pat search. Also, at P. 5 of said Police report, Officer William Chase asserts that the Extended Stay is a known place for drugs and prostitution. See Ex A.

22.     The Dublin Police Department have a website which is where they keep the public updated on crime. It is called CrimeReports.com, and http://www.ci.dublin.ca.us/133/Crime-Stats. Plaintiff and his criminal attorney searched said website for crimes of drugs and prostitution reported at 4500 Blvd., Dublin Ca (which is the Extended Stay America Hotel), and no crimes of drugs and prostitution was listed for the months prior to October 15, 2015.There was only one crime of theft eight days after Plaintiff's arrest.

23.     The California Department of Justice office has a website that obtains a statistical list of crimes reported by the local police department. After running a search of 2014 and 2015 on the DOJ's website for crimes of drugs and prostitution for Dublin California, no crimes of drugs and prostitution are listed. Other crimes were listed nothing of drugs and prostitution. See Exhibit B.

24.     Lastly, a snapshot of the demographics of Dublin, California reflects that African Americans make up only 9.13% of the population of 51,780. See Exhibit C.

25.     Prior to the custodial interrogation, while Plaintiff was in handcuffs seated in the backseat of Officer William Chase's vehicle, Plaintiff noticed his cousin Karl Coakley, Bianca Ruiz, Sister-in-law, and wife arrive at the scene talking to Officer William Chase, and several other officers who eventually arrived. Plaintiff was able to observe Officer William Chase pat search all of his cousins, sister-in-law and wife. Several minutes later, Officer William Chase approached the vehicle with

another officer and asked Plaintiff about the markings on the firearm. Plaintiff replied "It came from the sand paper. My wife was trying to chrome it or something when she first got it years ago"

26.     Officer William Chase placed Plaintiff under arrest for violation of California Penal Code 25400 in violation of carrying a concealed firearm, California Penal Code 25850(a) Carrying a loaded firearm in a city, and California Penal Code 23920 for altering the firearm with sand paper.

27.     In hindsight, Plaintiff was never arrested or charged for Officer William Chase's initial suspicion of Plaintiff committing the purported crime of urinating in public.

28.     The Extended Stay America hotel is deemed private property and not opened to the public. See **Exhibit D.**

29.     Plaintiff was driven to the local Alameda County Jail, booked and imprisoned for approximately 30 hours. Afterwards, Plaintiff placed a bail bond with a bail agent and was released on bail.

30.     Upon returning back to the hotel, Plaintiff intuited the officer's reasons for searching him was not justified and decided to learn if it was the first time someone black was searched similarly by that officer in the parking lot at the Extended Stay-Dublin California. Plaintiff conducted his investigation of the hotel by first taking pictures of the purported crime scene. Plaintiff then questioned the front desk receptionists about potential harassment. The receptionists at the time, known as Delilah, stated that they have had a growing number of complaints about officer's harassing their black employees in their parking lot.

**Prosecution's criminal complaint against Plaintiff**

31.     The District Attorney's office of Alameda County for the City of Pleasanton, and Deputy District Attorney, Anne Esposito, waited approximately three weeks before it filed a criminal complaint against Plaintiff on November 09, 2015 for the same charges Plaintiff was arrested for along with an additional charge under California Penal Code 29800(a)(1) Possession of firearm by felon. The reason why it took so long for the prosecution to file the criminal complaint against Plaintiff is

8

because the District Attorney's Office, Annie Esposito, and her colleagues conducted an investigation

into Plaintiff's former prison political profile, and learned of his current political affiliation as an civil

rights advocate and his ties to the co-founder of Black Lives Matter, and in light of the lack of

probable cause to a warrantless arrest and search and seizure of Plaintiff, totally disregarded the fact

that Extended Stay America Dublin is devoid of crimes of prostitution and drugs, and disregarded the

fact that Officer William Chase's affidavit for warrantless arrest and seizure failed to establish

reasonable suspicion to believe Plaintiff was armed and dangerous to satisfy a pat search.

**Plaintiff's prior felony and discharge of parole**

32.     Plaintiff suffered a prior felony conviction in July of 1998, when he was 18 years old for

robbery with a firearm. Plaintiff served exactly 11 years and 11 months in the California Department

of Corrections and was paroled on December 05, 2009. He successfully discharged parole on

December 05, 2012. From the date of his parole he worked as a paralegal for Joel S Farkas at Syd

Arthur Licit Law Corporation. Plaintiff developed his own corporation called Brignac Paralegal

Contracting Services and later incorporated to BPCS LAW, which he currently operates out of

Beverly Hills, California and Studio City California and currently employs several paralegals and

attorneys on a contract basis.

**Plaintiff's former prisoner's civil rights complaint**

33.     While incarcerated, from the years of 1998 up until December 05, 2009, Plaintiff faced constant

and ongoing federal constitutional civil rights violations. He spent years in the administrative

segregation aka "THE HOLE". Plaintiff trained as a jailhouse lawyer, studying and exercising his

federal constitutional rights against State Correctional Officials in California who violated his rights.

The following cases are:

a.   Jaron Brignac v. T. Sanchez, Case No. CIV S-04-1690 filed August 17, 2004 (Claim for

excessive use of force, cruel and unusual punishment 8th Amendment violation)

b.  Jaron Brignac v. Kimzey 2009 WL 545991 at *3 (E.D. Cal. Mar. 4, 2009) (The defendant

consisted of Governor Arnold Schwarzenegger, the warden, and several counselors)

c.  Jaron Brignac v Stainer Case No. 01-06377, filed October 31, 2001 (Cruel and Unusual

punishment, and denial to law library. The defendants were the captain, Lieutenant and prison

law librarian.)

**Plaintiff's current affiliation to Black Lives Matter**

34.   Prior to the formation of Black Lives Matter, Plaintiff and his cousin shared similar political

views about the police misconduct and the criminal justice system. Plaintiff has attended several

public political events. Plaintiff assisted in the Jeremy Marks case, which was a referral by his cousin.

This case gained a lot publicity and can be viewed at: http://www.laweekly.com/news/jeremy-marks-

attempted-lynching-case-reaction-2168285.

35.   Plaintiff's cousin progressed successfully in her fight for justice against the Los Angeles County

jail. Plaintiff's cousin eventually became one of the co-founders of Black Lives Matter. Plaintiff share

the same last name as his cousin, although it was recently changed due to her marriage. Black Lives

Matter has drawn national attention, who also successfully formed the civilian oversight, which is

designed to curb police violence and reform the criminal justice system. Refer to the following

link/website: http://www.dailykos.com/story/2015/8/21/1414302/-Black-Lives-Matter-offers-10-point-

plan-to-curb-police-killing.

36.   Plaintiff's corporation, known as BPCS LAW, has a civil rights chapter that specifically deals

with officer misconduct which is published on his business website at:

http://www.defenseeviction.com/federal-civil-rights-attorney.html.

37.   Anyone who inserts Plaintiff's full name, Jaron Lamar Brignac, into the google search engine

for investigative purposes, will automatically self-populate most of Plaintiff's former prisoner civil

rights actions against State officials. The District Attorney, Anne Esposito, the District Attorney

10

office, and officer William Chase is aware of and was aware of Plaintiff's political affiliation as a former and current civil rights advocate for prisoners' civil rights, against police misconduct, against unconstitutional criminal justice systems, and his affiliation to Black Lives Matter.

38.     As a direct and proximate cause of Officer William Chase's action, Plaintiff suffered the loss of liberty, severe anxiety, pain and suffering, out of pocket expenses to retain a criminal attorney and bail bondsmen.

## COUNT ONE

### (Unlawful Search and Seizure Against Defendant William Chase)

39.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 38 above as though set forth herein.

40.     On October 15, 2015, Defendant William Chase, while acting under the color of State law, intentionally and unlawfully violated Plaintiffs' reasonable expectation of privacy when he ordered and subjected Plaintiff to a pat search without reasonable suspicion or probable cause that Plaintiff was armed and dangerous, and thereby violated the Plaintiffs' Fourth Amendment rights. (The ninth circuit ruled on this issue already. See **United States v. I.E.V., 705** F.3d 430, 432 (9th Cir. 2012) *"An officer can conduct a pat search if he "reasonably believes that `the persons with whom he is dealing may be armed and presently dangerous.")* Courts look at the "totality of the circumstances surrounding the stop" to determine whether there were "specific, articulable facts which, together with the objective and reasonable inferences" suggested that the occupant may have been armed and dangerous. *United States v. Burkett*, 612 F.3d 1103, 1107 (9th Cir. 2010).

41.     Accordingly, Defendant William Chase may have had reason to detain Plaintiff, but he did not have reasonable suspicion to believe Plaintiff was armed and dangerous to pat search him, especially since Plaintiff initially reached into his pockets to get his wallet to hand Defendant his identification when Defendant William Chase asked for Plaintiff's identification. Plaintiff's suspected crime was

11

urinating in public, which is not a crime that would lead a reasonable officer to believe a suspect is armed and dangerous. Also, Defendant William Chase falsely asserted that the Extended Stay in Dublin California is known for drugs and prostitution only to justify his need for suspicion, which was later contradicted by Plaintiff's search of the Dublin Crime Reports and Department of Justice Data base.

42.     By October 15, 2015, it was clearly established that an officer must have reasonable suspicion to believe Plaintiff was armed and dangerous to pat search him and by doing so will violate the 4th Amendment of the United States Constitution.

43.     The acts alleged in paragraphs 1 through 43 deprived Plaintiff of his right to be free from unreasonable search and seizure in violation of the Fourth Amendment to the Constitution of the United States, as applied through the Fourteenth Amendment, and are actionable under 42 U.S.C. § 1983. The relevant law was clearly established at the time the Defendant William Chase violated Plaintiffs' rights.

44.     As a proximate result of the acts alleged in paragraphs 1 through 44, Plaintiff suffered actual harm in the form of physical injury, deprivation of liberty, severe emotional distress, severe anxiety attacks which are ongoing and financial hardship, entitling each of them to damages in an amount to be proven at trial.

## COUNT TWO

### (Equal Protection violation-by Officer William Chase)

45.     Plaintiff incorporate by reference the allegations of paragraphs 1 through 44 above as though set forth herein.

46.     Defendant William Chase, while acting under the color of State law, did intentionally and unlawfully discriminate against Plaintiff solely on the basis of his race, and or ethnicity as a Black male, by subjecting Plaintiff to a pat search for urinating in the bushes.

12

47.    Plaintiff is a Black male/African American, which is a protected class. There exist other similarly situated non-black males in California, who were caught urinating by other Police Officers who did not subject those non-black males or females to a pat search for urinating in public, but on the contrary, Defendant William Chase subjected Plaintiff to a pat search because he was a black male, without any reasonable suspicion that Plaintiff may be armed and dangerous, which was unequal treatment based upon impermissible classification, with malicious intent, and Plaintiff suffered severe damages as direct and proximate cause.

48.    Officer's William Chase's police report denotes race based discrimination from its face when he asserts he noticed a black male in the parking lot. Actually, Defendant William Chase noticed a black male standing by a Mercedes Benz in the Parking lot area of the Extended Stay hotel in Dublin California which is only 9% black.

49.    By October 15, 2015, it was clearly established that targeting of individuals for a pat search predicated solely on race, ethnicity, religion, creed, or other protected class would violate the constitutional right of equal protection.

50.    The **Equal Protection** Clause of the Fourteenth Amendment commands that no State shall `deny to any person within its jurisdiction the **equal protection** of the laws, which is essentially a direction that all persons similarly situated should be treated alike." ***City of Clerburne v. Clerburne Living Center,*** 473 U.S. 432, 439 (1985)(quoting ***Plyer v. Doe,*** 457 U.S. 202, 216 (1982)). When a suspect classification is involved, the strict scrutiny standard applies and requires a close connection between the legislation or practice under examination and a compelling state interest. *See **Palmore v. Sidotti,*** 466 U.S. 429, 432 (1984) (**Equal Protection** Clause strives "to do away with all governmentally imposed **discrimination** based on **race**"). A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 based on **race** or other suspect classification "must plead intentional unlawful **discrimination** or allege facts that are at least susceptible of an inference of

13

discriminatory intent. *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).

51.    "A plaintiff may satisfy this showing by alleging four separate elements: (1) that the plaintiff was treated differently from others similarly situated; (2) this unequal treatment was based on an impermissible classification; (3) that the defendant acted with discriminatory intent in applying this classification; and (4) the plaintiff suffered injury as a result of the discriminatory classification." **Lam v. City & Cty**. of S.F., 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012), aff'd, 565 F. App'x 641 (9th Cir. 2014).

### COUNT THREE

**42 USC 1983-Fourth and Fourteenth Amendment Violation**
**Judicial Deception-By Defendant William Chase**

52.    Plaintiff incorporate by reference the allegations of paragraphs 1 through 51 above as though set forth herein.

53.    Defendant William Chase, while acting under the color of State law, did intentionally, unlawfully, deliberately falsify his affidavit for reasonable suspicion, or recklessly disregarded the truth in his affidavit for probable cause for warrantless arrest when he asserted that the Extended Stay hotel on 4500 Dublin Blvd, is a known place for prostitution and drug activity. (historically, courts justified officer reasonable suspicion when a suspect is in a place known for drugs and prostitution (See, e.g., *People v. Limon* (1993) 17 Cal.App.4th 524, 535 [21 Cal.Rptr.2d 397]; *People v. Lee* (1987) 194 Cal.App.3d 975, 983 [240 Cal.Rptr. 32].)). Secondly, if not for Defendant William Chase's dishonesty, the challenged action would not have occurred in the case at bar. Hence, Defendant William Chase needed to establish reasonable suspicion for targeting Plaintiff in the parking lot prior to driving up to Plaintiff to notice him urinating in public. He needed more than his observation of a Black male. Defendant William Chase's only excuse was, "the Extended Stay hotel on 4500 Dublin Blvd, is a known place for prostitution and drug activity", which is false and

14

contradicted by the crime reports for that area which reflects no crimes of prostitution and drug activity.

54.     Additionally, the hotel employees, who work at the Extended Stay hotel day and night, confirmed that there were no incidents of prostitution and drugs. If anything, the employees did complain of their black employees being harassed by police officers in their parking lot.

55.     The plaintiff alleging judicial deception must make a substantial showing of deliberate falsehood or reckless disregard for the truth and establish that but for the dishonesty, the challenged action would not have occurred. If the matter survives the summary judgment phase, the matter should go to trial. A plaintiff "must make (1) a `substantial showing' of deliberate falsehood or reckless disregard for the truth, and (2) establish that but for the dishonesty, the challenged action would not have occurred. If a plaintiff satisfies these requirements, `the matter should go to trial'." *See Liston v. County of Riverside,* 120 F.3d 965, 972-975 (9th Cir.1997) (quoting *Hervey,* 65 F.3d at 788-89 (citing *Branch,* 937 F.2d at 1383)). Materiality is for the court; state of mind is for the jury. *Hervey,* 65 F.3d at 789.

56.     By October 15, 2015, it was clearly established that falsifying an affidavit to justify reasonable suspicion to detain and search is judicial deception and violates the United States Constitution of the Fourth and Fourteenth Amendments.

**COUNT FOUR**
**42 USC 1983- Equal Protection Violation**
**By District Attorney of Alameda County -Pleasanton Branch**

57.     Plaintiff incorporate by reference the allegations of paragraphs 1 through 56 above as though set forth herein.

58.     Defendant, Alameda County District Attorney's Office, and Annie Esposito, Deputy District Attorney of Alameda County, California, while acting under the color of State law, did intentionally and unlawfully discriminate against Plaintiff solely on the basis of his race, and or ethnicity as a Black male,

15

out of retaliation due to his political affiliation as a civil rights advocate and affiliate of Black Lives Matter, by (1) prosecuting Plaintiff's case differently from other non-black males similarly situated, specifically, there exist other defendants who were former felons, charged with possession of a firearm by felon that were offered plea bargain deals that consisted of striking the prior felony charge in lieu of a sentence of house arrest, or 120 days in the county jail, but on the contrary, the Defendant offered Plaintiff nothing less than two years in the California State Prison, also, from the face of officer William Chase affidavit, a reasonable person would have known that the City of Dublin is not only a 9% black population, but also does not have a criminal history anywhere within its data base, and crime reports of prostitution and drugs, specifically at the Extended Stay hotel, yet instead of investigating such flagrant misrepresentation, and ruling the suspicion as unreasonable, the prosecution pursued charges out of retaliation and intent to discriminate; (2) this unequal treatment was based on an impermissible classification, that is, Defendant is subjecting Plaintiff to this kind of prosecution solely based on his race as a black male, and the prosecution knowledge of Plaintiff's political affiliation as a civil rights advocate against police misconduct and the criminal justice system, and not others; (3) Defendant acted with discriminatory intent in applying this classification, that is, since Plaintiff is a black male, former prisoner civil rights advocate who filed and litigated past civil rights actions against state officials as well as the former governor Arnold Schwarzenegger, Plaintiff is a close relative to a co-founder of Black Lives Matter who co-assist in several legal agendas, which is a nationally recognized civil right movement against racially motivated injustice, Plaintiff who had possession of a firearm in Dublin California, a city with a population of 9% blacks, Defendant intentionally discriminated against Plaintiff by refusing to offer Plaintiff the same plea bargains offered others similarly situated, for the sole purpose of making an example out of black males who advocate their civil rights as a form of punishing plaintiff for exercising said rights ; and (4) as a result of the discriminatory classification, Plaintiff suffered the injury of loss of liberty, severe emotional distress, and severe anxiety attacks.

16

59.    To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the

Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to

discriminate against the plaintiff based upon membership in a protected class." Thornton v. City of St.

Helens, 425 F.3d 1158, 1166 (9th Cir. 2005). Where state action does not implicate a fundamental right

or a suspect classification, the plaintiff can establish an equal protection "class of one" claim by

demonstrating that the state actor (1) intentionally (2) treated him differently than other similarly situated

persons, (3) without a rational basis. Gerhart v. Lake County, Montana, 637 F.3d 1013, 1022 (9th Cir.

2011) (citing Village of Willowbrook v. Olech,528 U.S. 562, 564 (2000) (per curiam)).

## COUNT FIVE

### 42 USC 1983-Supervisory and Municipal Liability
### -Defendants City of Dublin Police Services

60.    Plaintiff incorporate by reference the allegations of paragraphs 1 through 59 above as though set

forth herein.

61.    On information and belief, the unconstitutional actions and/or omissions of Defendants City of

Dublin Police Services, Alameda County District Attorney's Office, as well as other officers employed

by or acting on behalf of Defendant's CITY OF DUBLIN POLICE SERVICES, and Alameda County

District Attorney's Office,   were pursuant to the following customs, policies, practices, and/or

procedures of the Defendant's CITY OF DUBLIN POLICE SERVICES, stated in the alternative, which

were directed, encouraged, allowed, and/or ratified by Defendant's CITY OF DUBLIN POLICE

SERVICES and other policy making officers for the CITY OF DUBLIN:

      a.   To engage in or tolerate unreasonable seizures;
      b.   To fail to institute, require, and enforce proper and adequate training,
         supervision, policies, and procedures concerning seizures and the use of
         physical arrest tactics and control holds, when the need for such training,
         supervision, policies, and procedures is obvious;
      c.   To cover-up violations of constitutional rights by any or all of the
         following:
          i.   by failing to properly investigate and/or evaluate complaints or incidents
            of unlawful seizures and/or excessive force;

17

ii.   by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity; and

iii.   by allowing, tolerating, and/or encouraging police officers to: fail to file complete and accurate police reports; file false police report; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful police conduct, by withholding and/or concealing material information;

d.   To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department or hold another member accountable for official misconduct;

e.   To allow, tolerate, and/or encourage bias-based policing;

62.   Defendant's CITY OF DUBLIN POLICE SERVICES failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendant Officer William Chase with deliberate indifference to Plaintiff's Constitutional rights, which were thereby violated as described above.

63.   Defendant's Alameda County District Attorney's Office failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendant Annie Esposito, and other relevant District Attorneys to the instant case with deliberate indifference to Plaintiff's which were violated as described above herein.

64.   The unconstitutional actions and/or omissions of Defendant Officer William Chase as described above, and Annie Esposito, were approved, tolerated and/or ratified by Defendant's CITY OF DUBLIN POLICE SERVICES, and the Alameda County District Attorney's Office.

65.   Plaintiff is informed and believes, and thereupon alleges, the details of this incident have been revealed to the authorized policy makers within the CITY OF DUBLIN, and that such policy makers have direct knowledge of the facts of this incident. Notwithstanding this knowledge, the authorized policy makers have approved of the conduct of Defendant Officer William Chase and have made a

deliberate choice to endorse the decisions of Defendant Officer William Chase and the basis for those decisions. By so doing, the authorized policy makers within the CITY OF DUBLIN have shown affirmative agreement with the individual Defendant Officer William Chase's actions, and have ratified the unconstitutional acts of the individual defendant.

66.     The aforementioned customs, policies, practices, and procedures, the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification and toleration of wrongful conduct by Defendants Defendant's CITY OF DUBLIN POLICE SERVICES, were a moving force and/or a proximate cause of the deprivations of Plaintiff's clearly-established and well-settled constitutional rights in violation of 42 USC §1983.

67.     Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff and others would be violated by their acts and/or omissions.

68.     As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices and procedures of Defendants Defendant's CITY OF DUBLIN POLICE SERVICES, as described above, Plaintiff sustained serious injury and is entitled to damages, penalties, costs and attorney fees as set forth in paragraphs, above, and punitive damages against Defendant Officer William Chase in his individual capacity. Plaintiff does not seek punitive damages against Defendant Defendant's CITY OF DUBLIN POLICE SERVICES.

### INJUNCTIVE RELIEF

69.     In the instant case, Defendants acts and omissions are ongoing and violates Plaintiff's Constitutional rights as alleged above herein in paragraphs 1 through 68.

70.     Injunctive relief in the instant case is proper in the pending state case because the prosecution is racially motivated by the prosecution's knowledge of Plaintiff's suspect class, (a black male), and also

motivated by retaliation by the prosecution's knowledge of Plaintiff as a former and current prisoner's

civil rights advocate exercising his constitutional rights, and knowledge of Plaintiff's affiliation to the

co-founder of Black Lives Matter, co-assisting in constitutional civil rights actions and agendas. Thus,

the prosecution case is in bad faith, and cannot and will not result in a valid conviction because the

Defendant William Chase's affidavit for probable cause for warrantless arrest was falsified, and

racially motivated, and the Defendant's prosecution pursuit of charges is motivated by intentional

discrimination and retaliation against Plaintiff because he is a black male, and a former prisoner civil

rights advocate with former constitutional claims against State officials, and is affiliated as an assistant

and a cousin to a civil rights activist who is the co-founder of Black Lives Matter, who are nationally

recognized as a civil rights movement against injustice committed by State officials against the Black

race.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief against each and every Defendant

herein: **(no damages against District Attorney Office, or Anne Esposito. Injunctive relief only)**

    a.  Compensatory and exemplary damages in an amount according to proof and which is fair, just and reasonable;

    b.  Punitive damages under 42 USC 1983 in an amount according to proof which is fair, just, and reasonable;

    c.  All other damages, penalties, costs, interest, and attorney fees as allowed by 42 USC 1983 and 1988;

    d.  Injunctive relief, including but not limited to the following:

        i.     An order prohibiting the Defendants from prosecuting the pending state case until the exhaustion of Plaintiff's pending federal constitutional claims;

        ii.    An order staying and/or enjoining the pending State case against Plaintiff until the exhaustion of Plaintiff's constitutional claims, or an order dismissing the pending State charges against Plaintiff;

iii.     An order prohibiting the Defendants and their police officers from unlawfully
         interfering with the rights of Plaintiff and others to be free from unreasonable searches
         and seizures;

iv.      such other and further relief as presented by the evidence in this case and as
         this Court may deem appropriate.

Dated: _Aug. 11, 2016_          Jaron Brignac


                                 JARON BRIGNAC

21

EX. A

County of Alameda

DAILY

DECLARATION AND DETERMINATION

Probable Cause for Warrantless Arrest

| Arrestee/Suspect | | DOB | CDL | PFN | Agency Report # |
|---|---|---|---|---|---|
| JARON BRIGNAC | | 04/07/1979 | B7335303 CA | BKU225 | D15-02929 |
| Arresting Agency | | Declarant | | Agency Phone | Agency Fax |
| DUBLIN POLICE SERVICES (CA0010000) | | William Chase | | (925) 833-6673 | (925) 828-2893 |
| Arrest Date | Arrest Time | Arrest Location | | | |
| 10/15/2015 | 21:04:00 | 4500 DUBLIN BL DUBLIN CA (EXTENDED STAY) | | | |
| Holds | | Arrestee Home Address | | | |
| | | 16450 PALOMINO PL , #204 CANYON COUNTRY CA | | | |

Charges/Violations

PC 25400(A)(2) M(1 Counts), PC 25850(A) M(1 Counts), PC 23920 M(1 Counts)

On Thursday, 101515, about 2030 hours, while conducting a patrol check of the Extended Stay Hotel, located at 4500 Dublin Boulevard in the city of Dublin, I observed a black male, later identified as Jaron Brignac by his California Driver License (CDL), standing at the at the gutter of the parking lot. The Extended Stay Hotel is a known place for prostitution and drug activity. Brignac was facing the bushes, was looking down, and had both hands in front of him. I could see the ground directly in front of Brignac was wet. I determined Brignac was urinating in public.

I contacted Brignac to ascertain his business at the hotel. While speaking with Brignac, I advised him I was going to conduct a cursory search of his person for any dangerous weapons. As I took control of Brignacs hands, he admitted to having a firearm in his pants pocket. I detained Brignac in handcuffs and located and secured the firearm, a Glock model 23, .40 caliber semiautomatic pistol, a violation of PC 25400(a)(2). The firearm was loaded with a full 10 round magazine, a violation of PC 25850(a). Upon closer inspection of the firearm, I found several deep scratches on the serial number of the slide, rendering the serial number illegible. Brignac later admitted to sanding the slide in an attempt to Chrome it, a violation of PC 23920.

A check of the firearms serial number, located on the frame of the pistol, showed it to be registered to Brignac s wife, who was also staying at the hotel. Brignacs wife confirmed the firearm was hers.

I placed Brignac under arrest for violations of PC 25400(a)(2), PC 25850(a), and PC 23920. I transported Brignac to the Santa Rita Jail, where he provided a Miranda statement and was booked into custody without incident.

I declare under penalty of perjury that the above information was obtained through official police channels and is contained in the above-mentioned police report. Executed in the County of Alameda, State of California. Identity and signature of declarant verified by CRIMS.

Date: 10/16/2015 03:20:02          Declarant: William Chase          Badge: 2019

Reviewed and approved.

Date: 10/16/2015 03:32:12          Supervisor: Christopher Shepard          Badge: 1419

EX.   A



 **CrimeReports**®

EX. B

## Crime List: 09/28/2015 00:00:00 - 10/28/2015 23:59:59

🖨 PRINT (*For best results, select landscape orientation.)

If you viewed this list before the map was completely loaded, the incident list may be incomplete. Closing and reopening the print view will refresh the list.

| Crime Type | Date/Time | Address | Identifier | Description | Agency |
|---|---|---|---|---|---|
| Theft from Vehicle | 10/24/2015 09:40 PM | 4200 Block DUBLIN BLVD | D1503026 | GRAND THEFT - FROM MOTOR VEHICLE | Dublin Police Services |
| Theft | 10/24/2015 07:30 AM | 4500 Block DUBLIN BLVD | D1503024 | THEFT OF PERSONAL PROPERTY | Dublin Police Services |
| Theft of Vehicle | 10/12/2015 05:11 PM | 4300 Block JOHN MONEGO CT | D1502889 | TAKE VEHICLE W/O OWNER CONSENT/VEHICLE THEFT | Dublin Police Services |
| Traffic | 10/01/2015 10:10 PM | DUBLIN BLVD & GLYNNIS ROSE DR | D1502798 | DUI ALCOHOL/DRUGS | Dublin Police Services |



EX.    B



U.S. Census Bureau

Finder

EX. C

DP-1    Profile of General Population and Housing Characteristics: 2010

2010 Demographic Profile Data

NOTE: For more information on confidentiality protection, nonsampling error, and definitions, see http://www.census.gov/prod/cen2010/doc/dpsf.pdf.

**Geography: Dublin city, California**

| Subject | Number | Percent |
|---|---|---|
| **SEX AND AGE** | | |
| Total population | 46,036 | 100.0 |
| Under 5 years | 3,404 | 7.4 |
| 5 to 9 years | 3,059 | 6.6 |
| 10 to 14 years | 2,446 | 5.3 |
| 15 to 19 years | 2,452 | 5.3 |
| 20 to 24 years | 2,639 | 5.7 |
| 25 to 29 years | 4,116 | 8.9 |
| 30 to 34 years | 4,590 | 10.0 |
| 35 to 39 years | 4,775 | 10.4 |
| 40 to 44 years | 4,106 | 8.9 |
| 45 to 49 years | 3,686 | 8.0 |
| 50 to 54 years | 3,127 | 6.8 |
| 55 to 59 years | 2,427 | 5.3 |
| 60 to 64 years | 1,852 | 4.0 |
| 65 to 69 years | 1,273 | 2.8 |
| 70 to 74 years | 881 | 1.9 |
| 75 to 79 years | 627 | 1.4 |
| 80 to 84 years | 344 | 0.7 |
| 85 years and over | 232 | 0.5 |
| | | |
| Median age (years) | 35.3 | (X) |
| | | |
| 16 years and over | 36,656 | 79.6 |
| 18 years and over | 35,739 | 77.6 |
| 21 years and over | 34,213 | 74.3 |
| 62 years and over | 4,404 | 9.6 |
| 65 years and over | 3,357 | 7.3 |
| | | |
| Male population | 23,983 | 52.1 |
| Under 5 years | 1,737 | 3.8 |
| 5 to 9 years | 1,558 | 3.4 |
| 10 to 14 years | 1,272 | 2.8 |
| 15 to 19 years | 1,426 | 3.1 |
| 20 to 24 years | 1,562 | 3.4 |
| 25 to 29 years | 2,186 | 4.7 |
| 30 to 34 years | 2,382 | 5.2 |
| 35 to 39 years | 2,537 | 5.5 |
| 40 to 44 years | 2,074 | 4.5 |
| 45 to 49 years | 1,866 | 4.1 |
| 50 to 54 years | 1,624 | 3.5 |
| 55 to 59 years | 1,225 | 2.7 |
| 60 to 64 years | 911 | 2.0 |
| 65 to 69 years | 612 | 1.3 |
| 70 to 74 years | 462 | 1.0 |

EX. C

C

08/10/2016

| Subject | Number | Percent |
|---|---|---|
| 75 to 79 years | 323 | 0.7 |
| 80 to 84 years | 147 | 0.3 |
| 85 years and over | 79 | 0.2 |
| | | |
| Median age (years) | 34.7 | ( X ) |
| | | |
| 16 years and over | 19,165 | 41.6 |
| 18 years and over | 18,673 | 40.6 |
| 21 years and over | 17,689 | 38.4 |
| 62 years and over | 2,114 | 4.6 |
| 65 years and over | 1,623 | 3.5 |
| | | |
| Female population | 22,053 | 47.9 |
| Under 5 years | 1,667 | 3.6 |
| 5 to 9 years | 1,501 | 3.3 |
| 10 to 14 years | 1,174 | 2.6 |
| 15 to 19 years | 1,026 | 2.2 |
| 20 to 24 years | 1,077 | 2.3 |
| 25 to 29 years | 1,930 | 4.2 |
| 30 to 34 years | 2,208 | 4.8 |
| 35 to 39 years | 2,238 | 4.9 |
| 40 to 44 years | 2,032 | 4.4 |
| 45 to 49 years | 1,820 | 4.0 |
| 50 to 54 years | 1,503 | 3.3 |
| 55 to 59 years | 1,202 | 2.6 |
| 60 to 64 years | 941 | 2.0 |
| 65 to 69 years | 661 | 1.4 |
| 70 to 74 years | 419 | 0.9 |
| 75 to 79 years | 304 | 0.7 |
| 80 to 84 years | 197 | 0.4 |
| 85 years and over | 153 | 0.3 |
| | | |
| Median age (years) | 35.9 | ( X ) |
| | | |
| 16 years and over | 17,491 | 38.0 |
| 18 years and over | 17,066 | 37.1 |
| 21 years and over | 16,524 | 35.9 |
| 62 years and over | 2,290 | 5.0 |
| 65 years and over | 1,734 | 3.8 |
| | | |
| RACE | | |
| Total population | 46,036 | 100.0 |
| One Race | 43,293 | 94.0 |
| White | 23,634 | 51.3 |
| Black or African American | 4,347 | 9.4 |
| American Indian and Alaska Native | 246 | 0.5 |
| Asian | 12,321 | 26.8 |
| Asian Indian | 3,116 | 6.8 |
| Chinese | 3,633 | 7.9 |
| Filipino | 2,562 | 5.6 |
| Japanese | 376 | 0.8 |
| Korean | 940 | 2.0 |
| Vietnamese | 720 | 1.6 |
| Other Asian [1] | 974 | 2.1 |
| Native Hawaiian and Other Pacific Islander | 287 | 0.6 |
| Native Hawaiian | 84 | 0.2 |
| Guamanian or Chamorro | 66 | 0.1 |
| Samoan | 53 | 0.1 |
| Other Pacific Islander [2] | 84 | 0.2 |
| Some Other Race | 2,458 | 5.3 |

Ex. D



extended
**STAY
AMERICA**

Extended Stay America is a privately owned property. For the comfort and safety of ALL hotel guests and employees, the use of any substance on Hotel property that is not allowed under United States Federal law (vs. State law) is **prohibited.** This includes the use, in any form, of marijuana.

Further, please be aware that smoking of any substance in ANY non-smoking guest room will result in a cleaning fee of $250 charged to the credit card of the registered guest **and** removal from the property.  If smoking rooms are offered at this Extended Stay hotel, be advised that smoking of any substance, other than tobacco products, is prohibited.

Please direct any questions or concerns to the General Manager.

Thank you,

Jonella Colomer
General Manager

EX. D

D